Oh yay, oh yay, oh yay! The Honorable Appellate Court, 5th District, State of Illinois, is now in session. The Honorable Justice Cates presiding, along with Justice Welch and Justice McKaney. The first case this morning is 522-0136, People v. Peoples. Arguing for the appellant is Joanna Kowalski. Arguing for the appellee is Matthew Skiba. Each side will have 10 minutes for their argument. The appellant will also have five minutes for rebuttal. Please note, only the clerk of the court is permitted to record these proceedings today. Good morning, counsel. Good morning, your honor. Morning. As you can see, Justice Welch is not right now on the Zoom panel, but as you know, these matters are being recorded and they are available for listening to, and so if he doesn't join us during your argument, then he will be participating in the panel by listening into the call at a later date. Okay, Ms. Klusowska, is that how you pronounce your name? Yes, your honor. Okay, you're for the appellant? Yes. Okay, are you ready to proceed? Yes, I am. Okay, you may do so. Good morning, your honors. Good morning, counsel. May it please the court, my name is Joanna Klusowska and I represent the defendant, appellant Jason Peoples. After a bench trial, Mr. Peoples was convicted of armed robbery and home invasion based on a theory of accountability and was sentenced to 23 years in prison. Mr. Peoples raised four issues on appeal. I would like to focus my argument with the sufficiency of the evidence. Here, an armed robbery and home invasion took place on May 31st, 2018 at 2 20 a.m. at the residence of Anthony Sims, who was present at his home along with three guests. Three of the four perpetrators of the Mr. Peoples' 15-year-old son, Zion, the evening before. They were there when it was light out. Sometime in the late afternoon, a girl named Chelsea came and the group all started talking about ripping Sims off and stealing some weed from him. After Chelsea represented to the group that Mr. Sims had pounds of weed, Mr. Peoples went to Sims' apartment with Chelsea later that night and discovered there really wasn't much weed there and told the group that and said that any plan to rip him off was dead, was off. The next day, early morning hours, some of those who were hanging out at Mr. Peoples' mother's house and another individual committed the armed robbery at issue against Sims. This case required the state to prove that Mr. Peoples was legally responsible for the conduct of the alleged co-conspirators and that either before or during the commission of the offenses and with the intent to promote or facilitate the commission of the offenses, he knowingly solicited, aided, abetted, agreed to aid, or attempted to aid the others in their planning or commission of the crimes. In deciding this issue... Isn't the issue really whether your client effectively terminated his efforts to promote or facilitate the crime? Yes, that's one of the main issues, Your Honor. So even if this court finds that my client was at one point part of the plan for an armed robbery, which I'm not conceding that he was part of that plan because I think there was two different plans conflated into one. I think the original plan was completely terminated or it was more so contemplation of ripping off Sims. And then there was a completely new plan, which my client was not part of. But even if this court finds that at one point, my client was part of the particular plan or the armed robbery and home invasion that occurred at 2.20 a.m., I believe there's more than sufficient evidence that he effectively withdrew from this criminal enterprise long before 2.20 a.m. But he never contacted law enforcement or gave any sort of a warning, correct? That is correct, Your Honor. And the Illinois statute governing this matter states that a defendant will not be held accountable for the conduct of another if before the commission of offense, he or she terminates his or her effort to promote or facilitate that commission. And I think that is something undisputed, that he was not present before, during or after the robbery. And he told everyone that he had backed out. And that was what the trial judge found that he stated explicitly to everyone. And they understood it that way that he had backed out. And then the other elements that are required or one of the following elements are required that he wholly deprived his prior efforts of effectiveness in that commission. He gave timely notice to the proper law enforcement authorities or otherwise made proper efforts to prevent the commission of the offense. And I believe that there's sufficient evidence for two of those elements. And it was not necessary for him to have called the police. And in fact, I think that requirement would be an unfair burden on defendants and would be changing the law to require them to call police. I don't even think there's sufficient evidence here that my client even knew exactly that this armed robbery was to occur at 2.20 a.m. I mean, the evidence here is that Mr. Peoples told the group after he went into Simms' apartment for himself and asked him if he had some large amount of weed. And Mr. Simms indicated he had no weed. He came back to the group and told them that there was no weed for them to take. And I believe this would normally deter people who are looking to steal weed. It's also undisputed here that he took a gun. He found a gun at one point. And this was in possession of his son. So he took away that gun and he got very angry about it. So there he deprived the group of a weapon. He also took his son, who was communicating with everyone. As you can see, he was kind of the guy who was texting with the group. And it was really his friends, not Mr. Peoples' friends. He was not hanging out with teenagers and 20-year-olds, really, except for Chelsea. But besides that, Mr. Peoples took away his son from the group. So he deprived them of another potential assister in their potential criminal activities later on. And then he also kicked them off his property. And that's corroborated by a lot of evidence. Mrs. Peoples heard this huge argument going on. And the trial court did state in the record that she was an upstanding citizen. I don't think she had any reason to be lying. She heard the whole debacle going on. There's witnesses to the fact that Mr. Peoples slapped more. And he was obviously very angry with him and upset that he was giving his 15-year-old son access to guns. And then he went and dropped Zion off with his mom and completely ended communication with the group. And he also took his son's phone away from him. So that completely ended communication, too. And there is proof that this could have been effective because he kicked them off his property. So they had to go elsewhere. So I don't even think here there's enough evidence to show that he knew that what they were going to do later on. So to require him to call the police about something that there isn't sufficient evidence he would know was going to happen or likely to happen is not even what I hear. I think the trial court erred in misapplying the law in that regard. And it's clear that any efforts of effectiveness Mr. Peoples had allegedly provided the group previously had been completely undone. And he satisfied at the very least the element that he wholly deprived his or her prior efforts of effectiveness in that commission. In summation, there was insufficient evidence. Excuse me. Your client does admit, though, going to Sim's apartment and getting back to the group about the amount of weed that he had in his apartment, correct? Yes, Your Honor. He does admit going back to the group and letting them know that there's really no weed there to take. And that Chelsea, who was the one representing that there was large quantities of weed to steal, was not telling the truth. So, yes, he did go back to the group and let them know, which I believe should have deterred them from wanting to go in there again. So this wasn't exactly a he said, she said kind of arrangement. I mean, your client did admit to some detail that the group reported to the police. Yes, Your Honor. He did admit to certain things, but I think that a lot of what he admitted to is admissions that he was contemplating robbing Sims. But I don't believe it amounted to evidence that he was part of this conspiracy. I think it was more so contemplations entering that territory. Then he admitted the potential plan was to rip Sims off if he did have pounds of weed. Um, but that's not what is required. Um, there's that's that's not the standard for holding him accountable here. Okay, your time has expired. You'll have a few minutes after Mr. Skiba argument. Mr. Skiba for the state. Are you ready? Yes, Your Honor. Good morning. Your honors and please the court counsel. One second. I think Justice Welch has joined us. Justice Welch. Looks like he's muted. Okay, there he is. Okay, Justice Welch, you've joined us. Okay, I can hear him now. Okay, can you hear us now? Justice Welch? Yes. Okay, we are beginning the state's argument in people versus peoples. Got it.  Okay, Mr. Skiba, you may proceed. Thank you, Your Honor. May it please the court counsel. My name is Assistant Attorney General Matt Skiba on behalf of the people. We'd asked the court to affirm the trial court's judgment. The evidence was more than sufficient to support the trial court's verdict. And the trial court did not commit plain error on the three alleged errors. The defendant alleges here. So starting with the sufficiency challenge, viewing the evidence in the light most favorable to the prosecution as this court must do in a sufficiency challenge. A rational prior fact could conclude the defendant was accountable for the Sims robbery and that he failed to prove that he withdrew on these facts. It's important to note that this was a bench trial below, and that the trial court was in the best position to resolve any inconsistencies and to judge the credibility of the witnesses, including several of the co-conspirators that executed the robbery. So starting on the threshold question of accountability, it's important to know that each of the co-conspirators, plus Zion, who was not charged, either testified or told police that defendant either planned the robbery or agreed to it. And the testimony showed that he discussed the layout of Sims apartment with his co-conspirators, discussed that there was no need for the use of force. Both Torey's and Galloway's testimony suggests that defendants provided guns to his co-conspirators. As I believe Justice Cates noted, defendant himself visited Sims apartment in what he called a fact-finding or what I'll call a scouting mission. There was two visits. And also two co-conspirators, Galloway and Torey, testified that he actually followed his co-conspirators to the scene of the crime shortly before the robbery took place, with Galloway testifying that he sat in the car as his co-conspirators executed the robbery, and Torey testifying that a defendant drove past the apartment, pointed at it, and then drove away. His accountability is also demonstrated by- Mr. Skiba, you have Scott who says that he wasn't part of this. Isn't that true? Scott testified that the defendant backed out? Certainly, Your Honor. I mean, there were inconsistencies across co-conspirators. Certainly, that's granted here. But again, in a sufficiency challenge, this court needs to view the evidence in a light most favorable to the prosecution. So even though Scott testified that the defendant was not there, you have two co-conspirators testifying to the contrary. State, isn't it possible to view the evidence that while the defendant initially planned this, scouted it, once he did the fact-finding, he concluded there's not enough pot here to mess with. I'm out. So he withdrew. So I think I would have three responses to that, Your Honor. Starting to your first point, certainly, there was some testimony that defendant withdrew. But in a sufficiency challenge, the evidence must compel the contrary conclusion. And certainly, the evidence does not compel the contrary conclusion here. It's also important to know that it's defendant's burden to prove that the affirmative defense that he withdrew. And the testimony simply does not bear out that he withdrew. So even crediting defendant's account that he called the robbery dead, as we explained in our brief, there was ample evidence that that was not defendant's last word on the subject. So this alleged fight that occurred between defendant and his co-conspirators happened before midnight, before Zion was dropped off at his mother's house. But as Langenhorst, Galloway, and Torrey testified, defendant's involvement continued well past midnight. So Galloway was not picked up, was picked up around midnight. He testified that he went to defendant's house to get guns. Langenhorst testified that after the second scouting mission, again, this was after Zion was dropped off, there was a meeting between Moore and defendant for a long time at his house. And again, both Torrey and Galloway testified that defendant followed the group to the apartment before the robbery took place. So again, plenty of evidence that this alleged statement of it's dead was not the end of it. But even if that's really all, but the last thing that defendant said, that wasn't enough to affirmatively thwart his prior efforts of effectiveness. You know, on these facts, defendant can't unring the bell. His planning took hours, days, or even weeks in the making. And his statement of it's dead was simply a passive act. Again, we're not conceding he said it's dead, but if that's really what he said, that's just a passive act. But the statute requires some affirmative thwarting to either call the police, to call the victim and say that this robbery is due to take place or take some other affirmative act to thwart this robbery that he set in motion. So as the trial court noted, he lit the fuse and he got these young people, some teenagers fired up, but he did nothing to thwart his prior efforts of effectiveness. Mr. Skiba, one of the things that accountability requires is a knowing act to either solicit, aid, abet, or agree to aid the others in the planning or commission. What about the knowing element of accountability? How is that near? So I think the evidence on that point is overwhelming. So even setting aside the testimony, I'll start with the text messages, that there was text messages between defendant's son, Zion, and defendant Moore, or co-conspirator Moore. I believe Zion called the robbery his pop's lick. And there was overwhelming evidence that the term lick referred to a robbery. There was testimony, or excuse me, the text messages showed that Moore was taking too long to come to defendant's apartment. And Zion said something to the effect of, and I'm paraphrasing here, if you don't hurry up, my father's going to find somebody else to do it. You have- Okay, that's Zion, but that's not the defendant. Certainly. But you have the co-conspirators, again, each testifying that collectively, defendant discussed the layout of the apartment, the fact that there was no need for force. You also have text messages between defendant and Langenhorst on the first scouting mission saying, who's in the apartment? Langenhorst is testifying, or excuse me, messaged him, there's too many people in the kitchen, that plan where I'm going to unlock the kitchen door is not going to work. All of that shows that this was a conscious and deliberate plan that defendant set in motion. And also defendant's own testimony is incredibly damning on that score. He admitted to going on that second scouting mission, as I'll call it, or fact finding mission that he called it, to see how much marijuana that was. And as the trial court noted below, even though this wasn't the, in the trial court's words, the big whale of a robbery that defendant thought it would be at the outset. Again, the evidence is overwhelming that despite that finding out that there wasn't a huge amount of marijuana to take, that the robbery that he set in motion, that plan was still executed really at his direction and at his knowing. I see my time is just wrapping up. I'll just comment briefly on the remaining issues, if I may. Defendant has forfeited all remaining claims that he cannot excuse his forfeiture. Really those claims could be rejected in one fell swoop. There's no clear error, which would, and this is an abuse of discretion standard to begin with, even de novo. So the trial court didn't have a sua sponte duty to intervene. And there was neither first or second pronged claim error. The evidence was not closely balanced and there wasn't any structural error. And that's what the Supreme Court has required. Okay, Mr. Skiba, does that conclude your remarks for the state? It is, Your Honor. We'd ask the court to move. Okay, thank you. Ms. Klusowska, rebuttal? Here, the state has selected portions of witness testimonies to fit its narrative, but I could do the same with the witnesses and it could tell a completely different narrative in which Mr. Peoples was not involved at all because they all made admissions showing that he didn't do the It wasn't his idea. He wasn't present and that he withdrew. If I go through the witnesses, Galloway told police that Moore planned everything. He testified also that on the night of the robbery, Mr. Peoples backed out and then got testified that he brought a gun with himself. And after the armed robbery, the group went to Galloway's place and portioned out the tiny bit of weed between Moore, Galloway, and Scott and Mr. Peoples was not there. He also testified that the firearms used in the robbery were all obtained from Moore. And he also testified the planning of how the robbery was going to be performed at Galloway's where Mr. Peoples wasn't present. Also, I just want to note that a few of the witnesses also testified, which includes Scott, that they had no idea where the weed was supposed to be when they entered and invaded Sims apartment. Before the robbery, Moore and Galloway were the ones giving the orders and that's from Scott's testimony. After it, Scott, Moore, Tory, and Galloway went back to the Galloway residence and split the proceeds. And like I said, Mr. Peoples was not a part of this. When police asked what Mr. Peoples had to do with the robbery, Scott told them twice that he backed out. He asked out and Mr. Peoples stayed home, he said. And he testified that Mr. Peoples really did stay home, was not present before, during, or after the robbery when the proceeds were divvied up. He testified that he, Moore, and Tory got Galloway and they all met to discuss the actual details of the robbery at Galloway's residence. And Tory testified that Chelsea was the one that said that they were, that Chelsea was the one that told the group that Sims was selling weed in the house. And she also testified that she had pounds of weed. She testified that Chelsea told them Sims apartment would be a good location to rob. She testified that while at Mr. Peoples' mom's place, there was no discussion on how they would get inside the apartment, nor was there any discussion about what Sims address was. And it's clear from the record that it was Chelsea who pointed out to Tory, Moore, and Scott as to where Sims even lived because Mr. Peoples wasn't even there in the car. And then also when defense counsel asked Tory, other than there was a house that had weed in it, per Chelsea's representations, what other planning, what other decision, what other than that, there's a house with weed. And she said that was all. So all of their testimony is very vague about what Mr. Peoples' true involvement really was. There's not anything, there is nothing specific that he really did besides go in and determine that there is no weed for the taking. And I think that supports his, completely supports his defense of withdrawal. And all these witnesses that the state put on either told police or testified on the stand that they understood Mr. Peoples to have not been part of their plan for this armed robbery. I just think there is complete lack of evidence to show his ability for it. And I want to end my argument just stating that the unimpeached and properly admitted evidence in this case is consistent with my client's version of events on the stand. And this shows he's not integral to the armed robbery. They were going to place at 2.20 a.m. on May 31st. He didn't even know it happened and he was completely opposed to any use of guns. Took his son away from the group as a potential participant to any future crimes that night. Kicked the group off his property and completely ended ties with them. There's no evidence that he started texting with them or anything like that. The evidence in this case only shows that the original suspects that police interviewed are those legally responsible for the armed robbery occurring, not Mr. Peoples. I have to stop you there. Your time has expired. Justice McKinney, questions? Just one. How do you respond to the trial court's finding that your client lit the fuse in your argument? You can't unring the bell. But for your client, this robbery never would have occurred. Isn't that true? Your Honor, I do not think that's true. I think that Chelsea, there's sufficient evidence to show that Chelsea was the one that rang the bell and she was the one that introduced this idea to everyone, not my client. I think that he contemplated this idea because of Chelsea's representations along with the rest of the group. I think the state's theory was that he was the ringleader to surmise some sort of evidence that he was part of this. But it just doesn't add up. All right. Thank you. Thank you. Justice Welsh, any questions? Okay. Hearing none. Thank you both for your arguments here today. This matter will be taken under advisement and we will issue an order in due course. Have a great day. Thank you.